**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAPITOL INDEMNITY CORP., | ) | Case No. 1:25-cv-00821 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Reuben J. Sheperd |
| | ) | |
| CAMPUS HEALTH SERVICES, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

Plaintiff Capitol Indemnity brings a breach of contract claim against Defendants Campus Health Services Inc. and DMD Management Inc.  In response, Defendants moves to stay all proceedings.  Additionally, Capitol Indemnity moves to supplement the record with an item for judicial notice. For the reasons stated below, the Court **DENIES** Defendants' motion to stay and **GRANTS** Plaintiff's motion for judicial notice.

**STATEMENT OF FACTS**

Defendant DMD Management, an entity which provided "management and consulting services to skilled nursing facilities," managed ten related limited liability companies, each of which operated a nursing home in the state of Ohio.  (ECF No. 16-1, PageID #150; ECF No. 16, PageID #139 (confirming that the management agreement applied between DMD Management and each limited liability company).) The names of these LLCs were as follows:  Legacy Bucyrus Operating Co. LLC,

1

Legacy Dublin Operating Co. LLC, Legacy Chillicothe Operating Co. LLC, Legacy Riverview of SP Co. LLC, Legacy Marietta Operating Co. LLC, Legacy Hillsboro Operating Co. LLC, Legacy Miamisburg Operating Co. LLC, Legacy Centerville Operating Co. LLC, Legacy Beavercreek Operating Co. LLC, and Legacy Kettering Operating Co. LLC.  (ECF No. 1-3; ECF No. 1-4; ECF No. 1-5; ECF No. 1-6; ECF No. 1-7; ECF No. 1-8.)  Defendant Campus Health Services also had some relationship with these LLCs, although the nature and extent of that relationship is not spelled out in the record.  (ECF No. 1, ¶ 6, PageID # 2.)

In the management agreement dated December 22, 2022, each limited liability company engaged the services of DMD Management.  (ECF No. 16, PageID #139 & #142; ECF No. 16-1.)  Among other enumerated duties, DMD Management assumed responsibility to secure "any additional services required for the Facility to care for its residents from outside providers."  (ECF No. 16-1, § 5.6, PageID #153.)  The agreement included an indemnification provision to protect DMD Management:

> **Section 10.1 Facility Indemnification**. Company shall indemnify, defend and hold harmless Manager from and against any and all liabilities, losses, costs, expenses, including reasonable attorneys' fees, claims, actions to causes of action, which result, directly or indirectly, from any breach by the Facility of any of the Facility's duties, obligations and responsibilities under this Agreement or from the performance or the failure to perform by the Facility of any of the Facility's duties, obligations and responsibilities under this Agreement.

(ECF No. 16-1, § 10.1, PageID #157.)

Between September 29 and October 4, 2024, DMD Management used the services of Capitol Indemnity to secure utility bonds to enable each of the ten limited liability companies to establish electricity service for its nursing facility.  (ECF

2

No. 16, PageID #139; ECF No. 1, ¶ 7, PageID #2–3; ECF No. 1-2.)  As part of this arrangement, both Campus Health Services and DMD Management signed an indemnity agreement guaranteeing that the issuance of these utility bonds would not cause financial harm to Capitol Indemnity.  (ECF No. 1-1, PageID #11–16.) Acknowledging that the bonds were for "entities [Defendants] manage but do not own and/or control," the indemnity agreement stipulated that Defendants "individually, jointly and severally, agree to hold the Surety harmless from all Loss and to pay back or reimburse the Surety for all loss." (*Id.*, PageID #11.)

Beginning in January 2025, Capitol Indemnity received notice that six of the ten limited liability companies failed to pay their utility bills, resulting in claims against their Capitol Indemnity bonds.  (ECF No. 1-3; ECF No. 1-4; ECF No. 1-5; ECF No. 1-6; ECF No. 1-7; ECF No. 1-8, PageID #42–70.)  After reaching out to Defendants and the limited liability companies and receiving no response, Capitol Indemnity resolved these claims by paying a total of $75,345.49 to the utility company.  (ECF No. 1, ¶¶ 18–20, PageID #6.)

On August 5, 2025, all ten limited liability companies filed for Chapter 7 bankruptcy.  (ECF No. 1, ¶ 23, PageID #7.)  Although DMD Management executed the August 2025 bankruptcy petitions on behalf of each limited liability company, DMD Management represents that the management relationship has since ended. (ECF No. 16, PageID #140.; *Legacy Beavercreek of Dayton Operating Co., LLC*, No. 3:25-bk-31552; ECF No. 1; *Legacy Miamisburg Operating Co., LLC*, No. 3:25-bk-31553, ECF No. 1; *Legacy Centerville Operating Co., LLC*, No. 3:25-bk-31554, ECF

3

No. 1; *Legacy Kettering Operating Co., LLC*, No. 3:25-bk-31555, ECF No. 1; *Legacy Bucyrus Operating Co., LLC*, No. 3:25-bk-31558, ECF No. 1; *Legacy of Chillicothe Operating Co., LLC*, No. 3:25-bk-31559, ECF No. 1; *Legacy Dublin Operating Co., LLC*, No. 3:25-bk-31560; *Legacy Hillsboro Operating Co., LLC*, No. 3:25-bk-31561, ECF No. 1; *Legacy Marietta Operating Co., LLC*, No. 3:25-bk-31562, ECF No. 1; *Legacy Riverview of South Point Operating Co., LLC*, No. 3:25-bk-31568, ECF No. 1.) In October 2025, both Capitol Indemnity and DMD Management filed proofs of claim in each bankruptcy case.  (ECF No. 1, ¶ 24, PageID #74; ECF No. 16, PageID #136–37.)

## STATEMENT OF THE CASE

On November 7, 2025, Capitol Indemnity filed this lawsuit, alleging that Defendants breached their contract by failing to reimburse Capitol Indemnity for its losses despite the indemnity agreement.  (ECF No. 1.)  Capitol Indemnity seeks reimbursement for the $75,345.49 it expended on defaulted utility bills as well as interest, court costs, and attorneys' fees.  (ECF No. 1, ¶ 30, PageID #9.)

On January 23, 2026, Defendants moved to stay all proceedings in this case. (ECF No. 16.)  Defendants contend that the automatic bankruptcy stay, which protects the limited liability companies from further legal action under 11 U.S.C. § 362, should be extended to protect Defendants because DMD Management's contract with the debtor-LLCs obligates them to "absolutely indemnify" DMD Management.  (ECF No. 16, PageID #136.)  Defendants do not suggest that Campus Health Services had any such contractual arrangement.  Alternatively, they argue

4

that the Court ought to impose a discretionary stay in the interest of judicial economy and so that the bankruptcy proceedings can be resolved before this litigation proceeds.  (*Id.* at PageID #140–41.)

Capitol Indemnity opposes the motion to stay and contends that Defendants are not eligible for the automatic stay's protection. (ECF No. 21.)

## JUDICIAL NOTICE

As a preliminary matter, Capitol Indemnity moved to supplement the record with a bankruptcy court decision, of which it seeks judicial notice.  (ECF No. 28.)  In that decision, the bankruptcy court decided not to extend the automatic stay that protects the ten bankrupt limited liability companies to several non-debtor entities related to DMD Management.  (ECF No. 28-1, PageID #412 n.10 (explaining the relationship between DMD Management and these non-debtor entities and noting that "DMD [Management] refers to the Non-Debtors and DMD [Management], together, as the "DMD Parties")).

Rule 201 governs judicial notice, which allows a court, "at any stage of the proceeding," to take notice of "a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Under this rule, courts "routinely take judicial notice of documents filed on public court dockets." *Estate of Arce by and through Huerta v. Panish Shea & Boyle LLP*, No. 19-cv-0500, 2019 WL 6218781, at *2 (S.D. Cal. 2019).  The bankruptcy court's decision easily falls within this

5

description.  Moreover, Defendants do not object.  Accordingly, the Court **GRANTS** the motion for judicial notice.  (ECF No. 28.)

## ANALYSIS

The automatic stay of 11 U.S.C. § 362 pauses all legal proceedings targeting a bankrupt party and constitutes "one of the fundamental debtor protections provided by the bankruptcy laws."  *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1197 (6th Cir. 1983).  "Federal district and circuit courts have concurrent jurisdiction with bankruptcy courts to determine whether a Section 362 automatic stay applies to preclude a given claim."  *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir. 1985).  "The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay."  *Id.*

Pursuant to 11 U.S.C. § 362(a)(1), the filing of a bankruptcy petition automatically triggers a stay, which halts "the commencement or continuation . . . or other action or proceeding against the debtor that was or could have been commenced" before bankruptcy was initiated.  Additionally, under Section 362(a)(3), the stay forestalls "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  "Property of the estate" includes "all legal or equitable interests of the debtor in the property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

"It is universally acknowledged that an automatic stay of proceeding accorded by [Section] 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus" to the debtor.  *Lynch*, 710 F.2d at 1196.  However, in keeping with Section 362(a)(3), the stay does preclude litigation against non-debtors where such action "would inevitably have an adverse impact upon the property of the estate."  *In re National Century Fin. Enters., Inc.*, 423 F.3d 567, 578 (6th Cir. 2005).

Non-debtor parties who seek shelter beneath an automatic stay pursuant to Section 362(a)(1) must demonstrate "unusual circumstances" binding them to the debtor and must first obtain injunctive relief from the bankruptcy court.  *In re National Century Fin. Enters*, 423 F.3d at 578 (noting that the unusual circumstances test applies only to the Section 362(a)(1) analysis and not to situations where a stay is invoked under Section 362(a)(3)); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 314 (6th Cir. 2000) ("Extending a stay to nonbankrupt codefendants is justified only in 'unusual circumstances.'"); *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993) (recognizing that, before a non-debtor can obtain protection under Section 362(a)(1) due to unusual circumstances, "the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction pursuant to 11 U.S.C. § 105").  In this context, the Sixth Circuit has provided guidance regarding the sorts of things that might warrant a stay for a non-debtor:

> three general categories of unusual circumstances that *could* warrant a stay as to non-debtor defendants: when the non-debtor defendant is entitled to absolute indemnity by the debtor, when the stay would contribute to the debtor's reorganization, or when there is such identity

> between the debtor and the non-debtor that judgment against the non-debtor defendant will in effect be a judgment or finding against the debtor.

*Plastech Holding Corp. v. WM GreenTech Auto. Corp.*, No. 17-2122, 2018 App. LEXIS 16915, at \*1–2 (6th Cir. June 21, 2018) (cleaned up) (emphasis added).

Regardless of whether Section 362(a)(1) or 362(a)(3) is involved, courts are mindful not to compromise the statute's intended purpose. *See, e.g., West Inv. Foreign Shares, LLC v. Grove 1005, LLC*, No. 3:19-cv-312, 2020 WL 5549608, at \*2 (W.D.N.C. 2020) (focusing on the rationale behind the Section 362 stay, which "is to avoid disrupting repayment or reorganization plans"); *In re MCSi, Inc.*, 371 B.R. 270, 275 (S.D. Ohio 2004) (noting the primacy of the debtor's interests and finding that, "[w]ithout demonstrating the risk of harm to the debtor estate, [non-debtor parties] are not deserving of the benefits of the bankruptcy stay.").

> The stay of proceedings was intended to promote an orderly reorganization or liquidation of the debtor's estate thereby benefitting, secondarily, creditors of the estate. . . . Nothing in the legislative history counsels that the automatic stay should be invoked in a manner which would advance the interest of some third party, such as the debtor's co-defendants, rather than the debtor or its creditors.

*Lynch*, 710 F.2d at 1197.

In cases where a debtor pursues bankruptcy in Chapter 11 and reorganization of its enterprise rather than liquidation, the stay "protect[s] the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts . . . and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization." *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994,

8

998 (4th Cir. 1986). Where the object of the debtor's bankruptcy is liquidation under Chapter 7, the stay "provide[s] an orderly liquidation procedure under which all creditors are treated equally." *Lynch*, 710 F.2d at 1197.

Against this backdrop, Defendants argue that DMD Management is "entitled to absolute indemnity" by the debtors. (ECF No. 16-1; ECF No. 16, PageID #140.) They maintain that DMD Management's relationship with the debtors constitutes an "unusual circumstance" that warrants sheltering them under the protection of the automatic stay. (*Id.*) Alternatively, they request that the Court impose a discretionary stay to pause the present litigation while the bankruptcy proceeding is pending in the interest of judicial economy. (ECF No. 16, PageID #140–41.)

## I.      Applicability of the Automatic Stay

Defendants contend that DMD Management is entitled to the protection of the automatic stay because the indemnification provision of their management agreement constitutes "absolute indemnity" and presents an unusual circumstance. (ECF No. 16, PageID #141–43.) Invocation of the unusual circumstances test suggests that DMD Management seeks protection under Section 362(a)(1). But that path requires a protective injunction from the bankruptcy court, which is not present here. *In re National Century Fin. Enters.,* 423 F.3d at 578; *Patton*, 8 F.3d at 349. Accordingly, the Court need not consider whether the management agreement's indemnification provision creates an unusual circumstance. Instead, the stay can only be extended to protect DMD Management under Section 362(a)(3) if a judgment in this case "would inevitably have an adverse impact" on the estate of the debtors. *In re National Century Fin. Enters.*, 423 F.3d at 578.

9

Defendants argue for extension of the bankruptcy stay based on the unusual circumstances test and the interests of judicial economy, not on shielding the estate of the debtors. (*See* ECF No. 16.) They focus on their own interests and position, asserting that they no longer have a relationship with the debtor entities and that they did not benefit from the utility services. (ECF No. 16, PageID #142.) Defendants prefer to pause the present litigation while Capitol Indemnity seeks to recoup its losses from the limited liability companies in bankruptcy court. (*Id.*, PageID #145.)

The debtor entities are liquidating under Chapter 7 rather than reorganizing under Chapter 11. Accordingly, their estates will be distributed to creditors in the bankruptcy court, and the objective of the automatic stay is to "provide an orderly liquidation procedure under which all creditors are treated equally." *Lynch*, 710 F.2d at 1197.

The fact that both DMD Management and Capitol Indemnity filed proofs of claim in the bankruptcy proceedings suggests that this civil litigation and its outcome will not disrupt that liquidation process or have an adverse effect on the debtors' estates. Resolving this suit will not increase the debtors' total liability or impede efforts to resolve the proofs of claim. While the debtors' assets are distributed through the bankruptcy process, this case may determine the liability, if any, of DMD Management and Campus Health to Capitol Indemnity. In this context, Court observes that the bankruptcy court also concluded that it did not serve the debtors' estates to extend the automatic stay to non-debtors similarly situated to DMD Management. (ECF No. 28-1, PageID #437-39.)

For these reasons, the Court finds that the debtors' estates are not at risk of adverse impact from this litigation proceeding, and the Section 362 automatic stay does not extend to protect DMD Management from the present lawsuit.

## II.    Discretionary Stay

The Court's power to stay an action is "incidental to the power inherent in every court" to manage its docket "with economy of time and effort" for all involved. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626 (6th Cir. 2014) (quoting *Ohio Env't Council v. United States Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)); *see Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936).  To decide whether a stay is appropriate, the Court considers (1) the need for a stay; (2) the stage of litigation; (3) whether the non-moving party will be "unduly prejudiced or tactically disadvantaged"; (4) whether a stay will simplify the issues; and (5) whether the burden of litigation will be reduced for the parties or the Court. *Abington Emerson Capital, LLC v. Adkins*, No. 2:17-cv-143, 2018 WL 2454601, at *2 (S.D. Ohio June 1, 2018) (citation omitted).  This test is not precise, and the party seeking a stay bears the burden of showing both the need for delay and that no party or the public will suffer harm from it.  *Id.* (citing *Ohio Env't Council*, 565 F.2d at 396).

Defendants' argument for a discretionary stay focuses on the need for judicial efficiency: "sound principles of judicial economy warrant avoiding duplicative and piece-meal litigation in this case, such as would arise if this case were to move forward without the Bankrupt Facilities." (ECF No. 16, PageID #141.)  Suggesting that DMD Management, like Capitol Indemnity, has suffered losses from the debtors' bankruptcy filings, Defendants ask for a stay while the bankruptcy process is

11

permitted "to play out."  (ECF No. 27, PageID #397.)  By way of illustration, Defendants list four other pending cases in which DMD Management is being sued for the debts of the bankrupt limited liability companies, and they report that they are seeking stays in all those proceedings.  (*Id.,* PageID #399–400.)

Significantly, the Sixth Circuit has found that judicial economy is not a guiding consideration in the context of bankruptcy law:

> It is initially observed that any duplicative or multiple litigation which may occur is a direct by-product of bankruptcy law.  As such, the duplication, to the extent that it may exist, is congressionally created and sanctioned.

*Lynch*, 710 F.2d at 1199.  Additionally, a determination whether Defendants are liable to Capitol Indemnity in this suit will not interfere with the bankruptcy process of distributing the limited liability companies' assets among their creditors, including DMD Management and Capitol Indemnity.  Defendants fail to demonstrate a need for delay beyond their understandable preference for it.  Accordingly, the needs for and benefits of a stay are minimal, and the Court sees no reason for delay.

## CONCLUSION

For all these reasons, the Court concludes that the automatic stay pursuant to 11 U.S.C. § 362 does not protect Defendants and declines to enter a discretionary stay.  Accordingly, the Court **DENIES** Defendants' motion to stay the proceedings. (ECF No. 16.)  Additionally, the Court **GRANTS** Plaintiff's motion for judicial notice. (ECF No. 28.)

**SO ORDERED.**

12

Dated:  May 14, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio